Sneed, J.,
delivered the opinion of the Court.
This was an action of replevin, tried in the Circuit Court of Jefferson county, which resulted in a verdict and judgment for the plaintiff, from which the defendant appealed. It seems that about' thirty or forty witnesses were brought together by the plaintiff and the defendant, to testify as to- the identity of a horse, which was the subject of controversy. Upon the trial, the defendant moved the Court to have all the witnesses put under the rule, and presented the following affidavit in support of his motion:
“E. D. Rainwater v. Thos. A. Elmore.
“The defendant makes oath, that in order to have a fair and impartial trial in this cause, justice requires that the witnesses should be put under the rule. He *364 therefore asks an order of the Honorable Court that the witnesses in this cause, be placed under the rule.
(Signed) “Thos. A. Elmore.
“Sworn to and subscribed, this August 18th, 1868.
“S. S. McCuistioh.
“Endorsed — Filed August 18th, 1868.
“S. S. MoCuistion.”
This motion of the defendant was disallowed by the court, and the trial proceeded.
This is assigned as error, upon which the defendant asks a reversal of the judgment in this case.
There are other errors assigned; but in the view we have taken of this case, it is not necessary that they should be considered.
The Court is of the unanimous opinion, that it is the legal right of either party litigant before a court and juiy, upon good cause, shown by affidavit, to have all the witnesses in the cause against him, kept out of the hearing of such as may be undergoing an examination, and apart from them after their examination, so that they do not hear or know the testimony of those who have preceded them in the witness-box; and that an affidavit, setting forth that justice to the party requires that the witnesses shall be put under the rule, leaves the court no discretion upon the subject.
We are aware that there is a conflict of authority upon this question, both in this country and in England; and that it has been held by respectable authority that it is matter of discretion to allow or disallow such a motion. But we are at a loss to conceive how the “fair trial,” which the law guarantees to the citizen, *365 whether his life, liberty or property be involved, can be secured to him without a rigid observance of this rule.
The lawyer who has practiced long in jury causes can not have failed to observe that the practice of permitting witnesses to hear each other’s testimony has often resulted in a great and gross abuse of public justice.
Human nature is frail, and that frailty is as often illustrated in the witness-box, as elsewhere.
The witness in an excited litigation often becomes the mere partisan of the litigant whose cause he represents. His solicitude in the cause, and his anxiety to win the verdict, are often no less than those of his friend and summoner, whose life, liberty or property, may depend upon that verdict. He comes to regard the adverse party and the adverse witnesses as his adversaries, and often, with scarce a consciousness of the serious obligation that is upon him, lapses into the conviction that the scene before him is a mere tilt and tourney in which he enters to overturn and countervail the testimony of the adverse party. He has heard the evidence of his own party in regard to the transaction, and, perhaps, he remembers it somewhat differently, but a conflict would be fatal; and he often reasons his flexible conscience into the opinion that his own memory is at fault, and the statement of his confederate is the true version, and he therefore corroborates it. He has heard the testimony of the adverse party, and his ingenuity is taxed at once to strike it where it is vulnerable, and to destroy it. A brief and whispered conference behind the bar, and he finds one of his own party who saw the transaction as he saw it, and the thing is done. Of what value is *366 the cross-examination, that most efficacious test of truth, under such circumstances. The witness who is disposed to ignore the. truth, may now defy the onset of t'he most skilful cross-examination. And even he who would fain lean toward an honest story, finds himself confounded, and often yields his own conviction, to adopt the strong, emphatic statements of another.
The object of the trial is to elicit the truth. But, under such circumstances, and in an excited controversy, the truth is as often smothered as disclosed. The order to put the witnesses under the rule, says Mr. Greenleaf, upon the motion or suggestion of either party, is rarely withheld; but, by the weight of authority, the party does not seem entitled to it, as'a matter of right. 1 Greenl. Ev., 432. This doctrine, that upon the mere motion or 'suggestion of a party it does not seem a matter of right, appears to be traceble to the darker ages of English jurisprudence, where, in the case of Rex v. Cook, 33 Howell’s State Trials, it was said by Lord Chief Justice Treby that it was grantable of favor only, at the discretion of the Court. And this obiter of the Lord Chief Justice seems to have been quietly assented to by many of the courts since.
We have no hesitation in declaring that such a doctrine can not stand the test of principle, and that it is utterly incompatible with the perfect enjoyment of the right of a fair trial, guaranteed by the laws to the citizens of this country.
It is stated, as a uniform course of practice, that the Court, on the application of counsel, will order the witnesses to withdraw. 2 Phil. Ev., 395. In Taylor v. *367 Lawson, 3 C. & P., 543, Chief Justice Best regretted that the rule of parliamentary practice, which excludes all witnesses but the one under examination, was not universally adopted.
But in Southey v. Nash, 7 C. & P., 632, Baron Á1-derson expressly recognized it as the right of either party, at any moment, to require that the unexamined witnesses shall leave the Court. 1 Greenl. Ev., note to § 432. It is said by a distinguished. jurist of our own State, that it is considered doubtful whether or not it might be refused by the Court, even if no necessity for it was seen. Car. L. S., § 351. This point was not precisely in judgment in the case of Nelson v. The State, tried in this Court, at Nashville, in 1852. The question in that case was, whether the order of the Circuit Judge, pending the trial, permitting the witnesses who had been placed under the rule, to disperse at the recess of the court, and to be again put under the rule when the court resumed its sitting, was an error for which this Court would reverse its judgment.
This Court held that, to be such an exercise of discretion as this Court would not interfere with as exercised in that case. But, say the Court, if the Circuit Judge were to deny the rule altogether’, or so practice upon it as to make it inoperative in the face of an express objection of the party, then it. would probably amount to error sufficient to authorize the granting of a new trial; because it would be the denial of a right to the party demanding it, that might be very fatal to his cause. 2 Swan, 258.'
~We have been referred to no adjudication upon this *368 question, save in such applications for the rule as were made by mere motion or suggestion, without the grave accompaniment of the oath of the party that the rule was necessary to the ends of justice in the cause. It seems the settled practice everywhere, to grant the rule upon the mere motion of either party; but this is treated as a matter of favor. We go a little further, and hold it to be a matter of right, when, in the judgment of a party, he believes that justice demands that the witnesses shall be put under the rule, and his motion is supported by affidavit. Then it should be allowed, and it is error to refuse it.
Let the judgment be reversed, and the cause remanded for a new trial.